UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOLEY AND LEWIS RACING, INC.,

    Plaintiff,

v.

TORCO RACING FUELS, INC., a
Michigan corporation, GENERAL SALES
AND SERVICE, INC., a Michigan
corporation, KNOLL GAS MOTORSPORTS,
INC., a Michigan corporation and EVAN
KNOLL, an individual, jointly and severally,

    Defendants.
_____/

Case No. 08-cv-13416

Honorable Sean F. Cox
United States District Court

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND DENYING THE DEFENDANTS' MOTION FOR CHANGE OF VENUE**

Plaintiff Foley and Lewis Racing, Inc. ("Foley") filed this breach of contract claim on August 7, 2008. The matter is currently before the Court on two motions: (1) Plaintiff's Motion for Preliminary Injunction [Document No. 21]; and (2) the Defendants' Motion for Change of Venue [Document No. 13]. A hearing was held on these issues on December 11, 2008. For the following reasons, Plaintiff's Motion for Preliminary Injunction [Document No. 21] will be **DENIED**, and Defendants' Motion for Change of Venue [Document No. 13] will be **DENIED**.

**I. BACKGROUND**

This is a breach of contract action, filed by Foley on August 7, 2008. Foley is a drag

1

racing team which competes on the National Hot Rod Association ("NHRA") drag racing series. Defendants are parent and subsidiary corporate entities who manufacture high performance racing fuels. Defendant General Sales and Service, Inc. ("General Sales") entered into a sponsorship agreement with Foley for the 2008 NHRA season ("the Contract"). The Contract was performance-based, with General Sales agreeing to pay Foley $75,000 for each NHRA race Foley qualified for, and $50,000 for each race Foley entered but did not qualify. The Contract was potentially worth up to $1,800,000 if Foley qualified for each race on the 2008 NHRA circuit, and General Sales prepaid Foley $600,000 of that money on December 24, 2007 as an advance payment. It is undisputed by Foley that their team only entered and competed in four events in the 2008 NHRA season.

General Sales finances its business with a revolving commercial note held by Chemical Bank. The first such note between General Sales and Chemical Bank was dated September 20, 2004 in the amount of $120,000. The note was secured by a perfected UCC Article IX security interest. Successive notes under the security agreement increased the value extended by Chemical Bank to $15,000,000 on October 15, 2007, all of which were covered by perfected security interests.

Chemical Bank became uneasy as to the viability of General Sales as a going concern in the summer of 2008. Chemical Bank found out that the principal shareholder in the defendant corporations, Mr. Evan Knoll, was no longer showing up for work and could not be located. The management team for General Sales admitted they did not have the ability to continue the day-to-day operations of the company without Mr. Knoll's cooperation. Therefore, Chemical Bank exercised its rights under the security agreement and declared General Sales in default.

Chemical Bank requested a receiver be appointed in the Van Buren County, Michigan, Circuit Court, and Chemical Bank is attempting to sell off the assets of the corporation through a series of auctions.  It is unlikely these sales of assets will satisfy the amount owed on the note to Chemical Bank.

## II.  ANALYSIS

### A.  Plaintiff's Motion for Preliminary Injunction

The Court evaluates a motion for preliminary injunction on four factors: (1) the likelihood of the movant's success on the merits; (2) whether the injunction will save the movant from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be harmed or served by the injunction.  *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985).

Foley asks this Court to issue a preliminary injunction halting the auction of General Sales' assets for the benefit of Chemical Bank.  Foley cannot meet the requirements set out by the Sixth Circuit in *In re Delorean* for granting a preliminary injunction, and for this reason the Court will **DENY** Plaintiff's Motion for Preliminary Injunction [Document No. 21].

Foley cannot demonstrate a "likelihood of success on the merits" as required under *In re Delorean*'s first prong.  The plain language of the Contract conditions General Sales' obligation to pay upon Foley's performance, and at no time has Foley refuted the allegation that they only entered and qualified for four races in the 2008 NHRA season.  If that's true, the most Foley could claim under the Contract would be $300,000, only half the money they were paid in

advance by General Sales in December 2007.  At this stage in the litigation, Foley cannot meet their burden under the first prong of *In re Delorean*.

Under the second, "irreparable injury" prong of *In re Delorean*, Chemical Bank has done nothing more than sell assets in which it has a perfected security interest.  These assets of General Sales are outside the scope of Foley's grasp should it ever obtain a judgement.  Under Michigan law, a secured creditor has priority over particular assets, to the exclusion of others, while the unsecured creditor can look to the general assets and must share equally with other unsecured creditors.  *See United States v. Currency $11,331*, 482 F.Supp.2d 873 (E.D.Mich.2007).

By auctioning off the assets of General Sales, Chemical Bank is levying against assets in which it has priority over unsecured creditors like Foley.  Until the entire debt owed to Chemical Bank by General Sales is satisfied, which is unlikely to ever happen, Foley is not being injured by the auctioning off of General Sales' assets.  This prong has been considered by this Court to be so important that "failure to demonstrate irreparable harm is fatal to the petitioner's request...the Court need not [even] evaluate the other factors."  *Hacker v. Federal Bureau of Prisons*, 2006 WL 2559792, *8 (E.D.Mich. Sept. 1, 2006).

The third and fourth prongs of the *In re Delorean* test weigh against Foley as well. Under the third, "harm to others" prong, Chemical Bank would be hurt by this Court granting a preliminary injunction.  The bank has a perfected security interest in the assets of General Sales, and forcing the bank to await a verdict in this case would prevent them from auctioning off assets which are likely depreciating in value.  Under the fourth, "public interest" prong, upholding the rights of Article IX secured parties to repossess collateral without awaiting the

resolution of unsecured creditor claims is in the best interest of our credit-based economy. For these reasons, Plaintiff's Motion for Preliminary Injunction [Document No. 21] will be **DENIED**.

### B. Defendant's Motion for Change of Venue

Motions for Change of Venue are governed by Fed.R.Civ.P. 12(b)(3). In determining whether venue in the Eastern District of Michigan is proper, this Court must take into account 28 U.S.C. § 1391(c), which states as follows:

> In a state which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation will be deemed to reside in any district in that state within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

General Sales argues that this lawsuit should not be litigated in the Eastern District of Michigan due to all corporate defendants residing in Van Buren County, within the Western District of Michigan. Further, they argue the Contract was entered into in the Western District of Michigan, no drag races were to take place within the Eastern District, and Foley itself is a foreign entity without ties to the Eastern District. Foley argues that, as four of the thirteen licensed dealers of General Sales' products are within the Eastern District of Michigan, this shows sufficient contact with the Eastern District to defeat the Defendants' motion.

As Michigan is a multi-district state, General Sales can still be subject to suit in the Eastern District if "its contacts would be sufficient to subject [General Sales] to personal jurisdiction if [the Eastern District] were a separate state." 28 U.S.C. § 1391(c). In diversity cases, a federal court "must apply the law of the forum state to determine whether it may

exercise jurisdiction over the person of a non-resident defendant." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991).

Personal jurisdiction in Michigan is governed by the Revised Judicature Act, the relevant provisions pertaining to jurisdiction over corporations being found at M.C.L. §§ 600.711 and 600.715.  In a case of general jurisdiction, as is the case here, a defendant must "carr[y] on a continuous and systematic part of its general business within the state."  M.C.L. § 600.711.  This "continuous and systematic" requirement has been upheld by the U.S. Supreme Court as satisfying the requirements of due process for a state law minimum contacts analysis.  *See, e.g., Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).

As Defendants admitted at oral argument, four of Defendant's thirteen licensed distributors reside in counties located in the Eastern District of Michigan, and that the Eastern District of Michigan is a proper forum for this lawsuit.  Their regular business dealings with those four vendors satisfy the "continuous and systematic" requirement under Michigan law to give this Court jurisdiction over the parties in the Eastern District of Michigan.  For that reason, Defendant's Motion For Change of Venue [Document No. 13] is **DENIED**.

### III.  CONCLUSION

For the reasons explained above, the Court will **DENY** Plaintiff's Motion for Preliminary

Injunction [Doc No. 21], and will **DENY** the Defendants' Motion for Change of Venue [Doc. No. 13].

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 5, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 5, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager